THE COUNTY OF MACON, Plaintiff-Appellee, v. BOARD OF EDUCATION
OF DECATUR SCHOOL DISTRICT NO. 61, Defendant-Appellant.

Fourth District   No. 4—87—0432

Opinion filed December 30, 1987.

John T. Taylor and Merry C. Rhoades, both of Robbins, Schwartz, Nicholas, Lefton & Taylor, Ltd., of Decatur, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Thomas H. Moody, Assistant State's Attorney, of counsel), for appellee.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for *amicus curiae*.

JUSTICE SPITZ delivered the opinion of the court:

Defendant, the Board of Education of Decatur School District No. 61 (district), appeals from an order of the circuit court of Macon County enjoining it from further dispersing food for consumption by its students, faculty, and the public through its public school cafeterias until plaintiff, the County of Macon, has inspected the premises and has issued certificates of operation. For the reasons that follow, we affirm.

On May 10, 1977, Macon County enacted and published an ordinance entitled Macon County Food-Service Sanitation Ordinance, which regulates food-service operations in its jurisdiction. According to the county ordinance all food-service operations in Macon County are required to be licensed. The ordinance is administered in Macon County by the Macon County Health Department (Health Department). Among other things, the Health Department makes sanitary inspections of food-service operations throughout the county.

The district maintains and operates cafeterias in Decatur public schools for its students and teachers. Sanitary inspections of the district's cafeteria were made by the Health Department at least twice a

year for 10 years, ending with the year 1985. On October 30, 1985, the district notified the Health Department that it did not desire a license from the Health Department nor did it believe that it was required to secure such a license. The district further informed the Health Department that under its interpretation of section 3—14.22 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 3—14.22), only the regional superintendent of schools had jurisdiction concerning the inspection of school cafeterias. On September 11, 1986, the Health Department notified the Decatur school district that it did have the authority to inspect and license the Decatur school district's food-service facilities-and that it would be inspecting the public school cafeterias that fall. On September 15, 1986, the district informed the Health Department that it would not change its position on the matter and, therefore, refused to comply with the licensing ordinance or permit sanitary inspections of its school cafeterias. As a result of the controversy, no further inspections were made.

On November 26, 1986, Macon County filed a complaint in the circuit court against the district alleging that the Health Department was acting within its jurisdictional scope in inspecting the school cafeterias. Macon County sought enforcement of its licensing ordinance and to enjoin the district from barring sanitary inspections of the school cafeterias by the Health Department. The district filed an answer to the complaint and a motion to dismiss the complaint (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), alleging that the inspection of school property was within the exclusive jurisdiction of the regional superintendent of schools and that it was immune from suit. The motion to dismiss was denied and a bench trial was held on May 13, 1987.

The evidence adduced at trial reveals the following. In the operation of the district, a school lunch program is provided to students and faculty. The Decatur school district owns the cafeterias and contracts a company named Araserve to manage and operate the cafeterias. Araserve orders all food and supplies necessary and provides the management of all cafeteria employees. The cafeteria facilities and utensils are the property of the district.

A dispute arose in the fall of 1986 as to whether or not the Health Department had authority to inspect the school cafeterias. In September of 1986, the Health Department was making an inspection of Eisenhower High School. The inspector asked James P. Hendren, the director of business affairs and treasurer for the Decatur Public School System, to be present for the inspection. During the inspection the inspector noticed a roach problem in the Eisenhower facility. The inspector told Hendren that he should combine the chemical Pyrethrin

with the chemical Dursban that was already being used to remedy the roach problem. The inspector also allegedly threatened to "shut [the operation] down that day, on the spot" if the chemicals were not applied. Hendren then contacted Paul Fleetwood, a licensed technician on staff at the district. Fleetwood stated that the use of this chemical was not allowed in a food preparation area. Hendren informed the inspector of the conflict, and the inspector responded that the district should hire an outside agency to apply the chemicals. The district then hired Ducy Chemical Company to apply only Dursban, the same chemical the school district had been using. Thereafter, the district contacted its attorney, who stated in his opinion, the county Health Department had no jurisdiction in the matter as the regional superintendent was the only person who had jurisdiction to inspect the school premises pursuant to section 3—14.22 of the School Code. Ill. Rev. Stat. 1985, ch. 122, par. 3—14.22.

On June 12, 1987, the trial court entered its judgment order finding that the Health Department had authority pursuant to the provisions of "An Act in relation to the establishment and maintenance of county and multiple-county public health departments" (Public Health and Safety Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 20c13 *et seq.*) to make sanitary inspections of the facilities owned, occupied, and used by the district in the dispersion of food to its students, faculty, and the public. The court further found that the operation of the school cafeteria was subject to the provisions of the Macon County Food-Service Sanitation Ordinance. Hence, the court enjoined the district from further dispersing food for consumption by its students, faculty, and the public through its public school cafeterias until the Health Department was allowed to inspect the premises and issue the appropriate certificates of operation. The district now appeals. We have allowed the Illinois Attorney General to file an *amicus* brief.

The district first contends that the Health Department had no authority to inspect its public school cafeterias. It is the district's position that the regional superintendent of schools has the exclusive authority to inspect its schools. After reviewing the relevant statutes and the authority cited by the parties, together with the facts in this case as reflected by the record before us, we conclude that the Macon County Health Department has the authority to inspect public school cafeterias within its jurisdiction.

The State Department of Public Health has general supervision of the interests of health and lives of the people of the State of Illinois. (Ill. Rev. Stat. 1985, ch. 111½, par. 22.) The State Department of Public Health may adopt, promulgate, repeal, and amend rules and

regulations and make such sanitary investigations and inspections as may be deemed necessary to preserve and improve the public health, consistent with the law regulating sanitary practices relating to persons handling food served to the public. (Ill. Rev. Stat. 1985, ch. 111½, par. 22(c).) Section 2 provides that all local boards of health and health authorities of any locality shall enforce the rules and regulations so adopted. (Ill. Rev. Stat. 1985, ch. 111½, par. 22.) A locality is defined in section 2 as "any governmental agency which exercises power pertaining to public health in an area less than the State." Ill. Rev. Stat. 1985, ch. 111½, par. 22.

County health departments may be established pursuant to section 2 of the Public Health and Safety Act (Ill. Rev. Stat. 1985, ch. 111½, par. 20c1). Under section 14, a county health department may make and adopt its own rules as deemed necessary to protect and improve public health. (Ill. Rev. Stat. 1985, ch. 111½, par. 20c13.) Section 14 further provides that the county health department shall, within its jurisdiction, and professional and technical competence, enforce and observe all State laws pertaining to the preservation of health, and all county and municipal ordinances, and that it shall make all necessary sanitary and health investigations and inspections. Ill. Rev. Stat. 1985, ch. 111½, pars. 20c13(6), (8).

■■ Based upon our examination of these statutes we conclude that the Macon County Health Department is a local board of health that has been vested with the authority to promulgate regulations necessary for the protection and improvement of public health and enforce those regulations, as well as the rules, regulations and policies of the Illinois Department of Public Health. In addition, the Health Department has the authority to make all necessary sanitary and health inspections of public food-service operations within its jurisdiction, including the district's public school cafeterias.

Our conclusion is supported by the court's recent decision in *County of Winnebago v. Davis* (1987), 156 Ill. App. 3d 535, 509 N.E.2d 143, and several opinions of the Illinois Attorney General (1978 Ill. Att'y. Gen. Op. 135; 1982 Ill. Att'y. Gen. Op. 151; 1986 Ill. Att'y. Gen. Op. ____, No. 86—004).

The court in *Davis* was called upon to address an issue nearly identical to the one at bar. The defendant in *Davis* was the food-service director of Lincoln Middle School and was found to have violated certain provisions of the Winnebago County code. On appeal, the defendant argued that the regulation of school cafeterias was vested in the State Board of Education and therefore the local health code regulations were inapplicable to the school cafeteria. The appellate

court rejected this argument, holding that the specific delegation of authority to the county board of public health to promulgate and enforce sanitation regulations which impact on the general public health implies that the authority to regulate food-service operations in a school rests with the county board of health. The *Davis* court noted that the school board's authority to regulate sanitation was most likely only meant to extend to sanitation conditions of the building itself. *Davis*, 156 Ill. App. 3d 535, 509 N.E.2d 143.

Several opinions of the Illinois Attorney General have discussed the enforceability of county public health laws and are persuasive here. (*Decker v. University Civil Service System Merit Board* (1980), 85 Ill. App. 3d 208, 406 N.E.2d 173.) In 1978, the Attorney General concluded that county health departments are authorized to enact ordinances requiring the inspection and licensing of food-service establishments. (1978 Ill. Att'y. Gen. Op. 135.) In 1982, the Attorney General concluded that the county had authority to promulgate and enforce all regulations which might be necessary or expedient for the promotion of health or suppression of disease, including regulations regarding sanitary practices of school cafeterias. (1982 Ill. Att'y. Gen. Op. 151.) In 1986, the Attorney General concluded that the county may impose reasonable health regulations and licensing fees pertaining thereto upon schools located within the county. 1986 Ill. Att'y. Gen. Op. ____, No. 86—004.

■ We disagree with the district's contention that section 3—14.22 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 3—14.22) grants the regional superintendent of schools exclusive authority to inspect schools. An examination of section 3—14.22 reveals that its subject matter does not pertain to sanitary inspections of public food-service operations. (Ill. Rev. Stat. 1985, ch. 122, par. 3—14.22.) Rather, section 3—14.22 pertains to the general inspection of school buildings to determine whether the buildings are structurally fit and safe for occupancy. (Ill. Rev. Stat. 1985, ch. 122, par. 3—14.22.) Further, as pointed out by the Attorney General, nowhere in section 3—14.22 is the regional superintendent given "exclusive" authority to inspect the school buildings for structural safety. Consequently, we find no basis for the district's assertion that the regional superintendent has the exclusive authority to conduct sanitary inspections of school cafeterias for health control purposes.

Further, where, as here, the legislature has spoken generally in one instance by granting the regional superintendent of schools general building inspection authority, and in another instance by giving the county Health Department specific sanitary and health inspection

authority, the specific authority prevails. *Board of Education v. Carter* (1983), 119 Ill. App. 3d 857, 458 N.E.2d 50; *Davis*, 156 Ill. App. 3d 535, 509 N.E.2d 143.

In view of our foregoing analysis, we conclude that the trial court correctly ruled that the Macon County Health Department had the authority to enforce the Macon County Food-Service Sanitation Ordinance and to inspect the district's public school cafeterias. Ill. Rev. Stat. 1985, ch. 111½, pars. 20c13, 22.

■ The district next contends that the Macon County Health Department failed to comply with the rulemaking procedures and requirements of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1001 *et seq.*) in enacting the Macon County Food-Service Sanitation Ordinance. The trial court determined that the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1985, ch. 127, par. 1001) did not apply to the Health Department, as units of local government are exempt from compliance with the rulemaking procedures set forth in the Illinois Administrative Procedure Act.

Section 2 of the Public Health and Safety Act (Ill. Rev. Stat. 1985, ch. 111½, par. 22) states in part:

> "The provisions of 'The Illinois Administrative Procedure Act', approved September 22, 1975, are hereby expressly adopted and shall apply to all administrative rules and procedures of the Department of Public Health under this Act."

The Illinois Administrative Procedure Act applies to every "agency" defined therein. (Ill. Rev. Stat. 1985, ch. 127, par. 1002.) The term "agency" is defined in the Illinois Administrative Procedure Act in part as:

> "[E]ach officer, department, board, commission, agency, institution, authority, university, body politic and corporate of the State; and each administrative unit or corporate outgrowth of the State government which is created by or pursuant to statute, *other than units of local government and their officers, school districts and boards of election commissioners.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 127, par. 1003.01.

It is the district's position that the Health Department is not a unit of local government but instead a body politic and corporate of the State, and is, therefore, subject to the Illinois Administrative Procedure Act pursuant to section 3.01 (Ill. Rev. Stat. 1985, par. 1003.01). The district asserts that because its complaint alleged that Macon County is a body politic and corporate of the State, it is "affirmatively stating that their [*sic*] power is derivative of the State of Illinois Department of Public Health thereby making them [*sic*] a unit

of State government and not local government." We are unpersuaded by the district's contentions.

We first point out that the ordinance in dispute is an ordinance of the County of Macon, not a rule or regulation of the Macon County Health Department. We next point out that contrary to the school district's assertions, whether the Health Department is to be considered a unit of local or State government is a matter of legislative determination and judicial interpretation, not a matter of pleading. Both the Illinois Constitution of 1970 and Illinois Revised Statutes expressly define "counties" as "units of local government." (See Ill. Const. 1970, art. VII, §1; Ill. Rev. Stat. 1985, ch. 1, par. 1029; Ill. Rev. Stat. 1985, ch. 85, par. 2102.04.) Pursuant to the Public Health and Safety Act (Ill. Rev. Stat. 1985, ch. 111½, par. 20(c)), a county may establish and maintain a Health Department, by resolution of the county board or upon referendum. The Macon County Health Department exists by virtue of local county decision. Hence, the Health Department is a department of the County of Macon, which is a unit of local government. Accordingly, the rulemaking procedures and requirements of the Illinois Administrative Procedure Act do not apply to Macon County or its Health Department.

■ We are similarly unpersuaded by the district's contention that the Health Department failed to comply with the provisions of the State Mandates Act (Ill. Rev. Stat. 1985, ch. 85, par. 2201 *et seq.*) in enacting the Macon County Food-Service Sanitation Ordinance. The Illinois Administrative Procedure Act provides that "[r]ule-making which creates or expands a *State mandate* on units of local government, school districts, or community college districts is subject to the State Mandates Act." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 127, par. 1004(d).) The State Mandates Act applies to the "actions of State Government" that increase the cost of local government and require additional revenue. (See Ill. Rev. Stat. 1985, ch. 85, pars. 2201, 2202, 2203(b).) Here, however, the County of Macon is a unit of local government, and the action taken was the enactment of a local county ordinance. The provisions and requirements of the State Mandates Act (Ill. Rev. Stat. 1985, ch. 85, par. 2201 *et seq.*) do not apply to the enactment of county ordinances or rules and regulations of a county health department.

Finally, the district claims sovereign immunity as a bar to the action. The district twice cites to section 108 of chapter 127 of the Illinois Revised Statutes as authority for its contention; however, no such section exists. The district apparently intended to cite to section 1 of that chapter (Ill. Rev. Stat. 1985, ch. 127, par. 801) in support of

its contention that it was "acting on behalf of the State of Illinois and [was] not subject to suit under the Sovereign Immunity Act."

■■ ■ We are unpersuaded by this contention. School districts are considered to be "local public entities." (See Ill. Rev. Stat. 1985, ch. 85, par. 1—206.) Our supreme court has held that the common law doctrine of sovereign immunity is inapplicable to school districts (*Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955) and has abolished the sovereign immunity of local governments (see *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 282 N.E.2d 437; *Lansing v. County of McLean* (1977), 45 Ill. App. 3d 91, 359 N.E.2d 165 (and cases cited therein)). Further, the Illinois Constitution abolished sovereign immunity by providing: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.) Although the General Assembly thereafter attempted to reinstate the tort immunity of local governments by passing the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, par. 1—101 *et seq.*), it has not enacted legislation which would immunize one unit of local government from regulation by another unit of local government in public health and safety matters. (*E.g., Village of Swansea v. County of St. Clair* (1977), 45 Ill. App. 3d 184, 359 N.E.2d 866.) In the instant case, the County of Macon, through its Department of Health, sought to enjoin the district from prohibiting sanitary inspections of the district's public school cafeterias. Thus the doctrine of sovereign immunity is inapplicable here.

For the foregoing reasons, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.