SECOND DIVISION

November 30, 1999

No. 1-98-1525

LARISTOS, INC., an Illinois corporation,) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

v. ) 

)

CITY OF CHICAGO LICENSE APPEAL )

COMMISSION; GEORGE VELCICH, Chair; )

ALBERT D. McCOY, Commissioner; IRVING )

KOPPEL, Commissioner; RICHARD M. DALEY, )

Local Liquor Control Commissioner of )

the City of Chicago; WINSTON L. MARDIS, )

Director, Mayor's License Commission, ) Honorable

) Thomas P. Durkin,

Defendants-Appellees. ) Judge Presiding.

JUSTICE McNULTY delivered the opinion of the court:

In this case we must decide whether the Administrative Procedure Act (Procedure Act) (5 ILCS 100/1-1 
et
 
seq.
 (West 1996)) governs appeals from decisions of the City of Chicago License Appeal Commission (the LAC).  That issue, in turn, hinges on whether the LAC is an administrative unit of state government or a unit of local government.  We find that the LAC is a unit of local government, and therefore the Procedure Act does not apply.

On May 8, 1996, Laristos, Inc., submitted an application for a tavern liquor license.  The Mayor's License Commission denied the application.  Laristos appealed to the LAC.  The LAC issued its written order denying the appeal on March 11, 1997.  On April 4, 1997, the LAC denied Laristos' petition for rehearing.  The order stated:

"Notice is hereby given that any party has THIRTY-FIVE (35) DAYS after service of this order upon said party, to commence an action for administrative review in the circuit court of Cook County, Illinois, [citation].  The date of the mailing of this order to a party is deemed to be the date of service."

With the order the LAC sent a certification of a staff assistant that she sent the order, using first-class mail, on April 4, 1997.

Laristos filed its complaint for administrative review on May 12, 1997, 38 days after the LAC issued its final order.  The LAC moved to dismiss, pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1996)), for want of jurisdiction.  In response Laristos' attorney filed an affidavit in which he swore he received the order on April 8 or 9, 1997.  Laristos argued that the Procedure Act required the LAC to notify Laristos of the final order by registered or certified mail.  See 5 ILCS 100/10-50(a) (West 1996).  Because the LAC failed to send the order by registered mail, the date Laristos' attorney received the notice started the 35-day period for filing an action for judicial review.  See 
Board of Education of North Boone Community Unit School District No. 200 v. Regional Board of School Trustees
, 156 Ill. App. 3d 504, 507, 509 N.E.2d 132 (1987).  He received the notice no earlier than April 8, 1997, and he filed the complaint 34 days later, on May 12, 1997.

The LAC pointed out that both the Liquor Control Act of 1934 (235 ILCS 5/7-10 (West 1996)) and the Administrative Review Law (Review Law) (735 ILCS 5/3-103 (West 1996)) permitted service by first-class mail, and those statutes established the date of mailing as the date of service.  The trial court faced the question of whether the Procedure Act's notice provisions superseded the notice provisions in the earlier statutes.  The court held that the issue did not qualify as an easily proven matter and therefore disposition on a section 2-619 motion was inappropriate.  The court denied the motion to dismiss and reviewed the LAC's decision on the merits.  Following a hearing the court denied the complaint for review, thereby upholding the LAC's decision.  Laristos now appeals.

The LAC contends that the trial court lacked jurisdiction to review the decision because Laristos failed to file the complaint for judicial review within 35 days of the LAC's final order.  The parties agree that Laristos filed its complaint within the allotted time if the Procedure Act controls.

The Liquor Control Act gives local liquor control commissioners the power to issue licenses to sell liquor.  235 ILCS 5/4-4 (West 1996).  When the local commissioner refuses to grant a license, most applicants have the right to appeal to the Illinois Liquor Control Commission (State Commission).  235 ILCS 5/7-9 (West 1996).  But when the applicant seeks to appeal from the order of a local commissioner of a city of 500,000 or more inhabitants, he must appeal to the license appeal commission for that city.  235 ILCS 5/7-9 (West 1996).  An aggrieved party then may seek judicial review of a final order of either the State Commission or the local license appeal commission.  
People ex rel. Crazy Horse, Inc. v. Daley
, 40 Ill. App. 3d 341, 343, 352 N.E.2d 377 (1976).

The Liquor Control Act expressly makes the Procedure Act apply to proceedings before the State Commission.  235 ILCS 5/3-13 (West 1996).  No similar provision applies the Procedure Act to LAC proceedings.  When the General Assembly has intended the same procedures to apply to both the State Commission and the LAC, it has expressly so stated.  See 235 ILCS 5/7-9 (West 1996).  From the omission of the LAC from section 3-13 of the Liquor Control Act, we infer that the General Assembly intended that the Procedure Act should not apply to appeals from LAC decisions.  See 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 82, 630 N.E.2d 820 (1994).

Laristos argues that the Procedure Act applies to the LAC by its own terms, despite the omission from the Liquor Control Act.  The Procedure Act "applies to every agency as defined [therein]" (5 ILCS 100/1-5(a) (West 1996)), and the Procedure Act defines "agency" to include:

"each administrative unit or corporate outgrowth of the State government that is created by or pursuant to statute, other than units of local government and their officers, school districts, and boards of election commissioners."  5 ILCS 100/1-20 (West 1996).

The LAC is an administrative unit or corporate outgrowth of State government created pursuant to statute.  Therefore, it qualifies as an agency subject to the Procedure Act unless it is also one of the "units of local government."

The Illinois Constitution of 1970 defines "Units of local government" as "counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts."  Ill. Const. 1970, art. VII, §1; see 5 ILCS 70/1.28 (West 1996).  The court in 
Chicago Transit Authority v. Danaher
, 40 Ill. App. 3d 913, 915-16, 353 N.E.2d 97 (1976), reviewed the problems that led to the adoption of article VII in the 1970 Constitution.  The prior constitution included no provisions concerning local governments.  Statutes established "approximately 6,500 types of government *** in Illinois by 1970."  
Danaher
, 40 Ill. App. 3d at 915.  The court said:

"[T]he framers of the 1970 Constitution intended to recognize only three levels of government: the State and its agencies, municipalities and units of local government, and school districts.  Section 1 represents the intent of the convention to find and adopt a definition for all the myriad of types of local governments in Illinois.  We find no intent on the part of the convention to exclude any of the then existing types of local governments."  
Danaher
, 40 Ill. App. 3d at 916.

A "special district," defined as "a relatively autonomous local government which provides a single service," (
Danaher
, 40 Ill. App. 3d at 917), qualifies as a unit of local government.  The court found that the Chicago Housing Authority constituted a special district despite its lack of taxing power.

In 
Guse v. Board of Trustees of the Public School Teachers' Pension & Retirement Fund of Chicago
, 203 Ill. App. 3d 111, 560 N.E.2d 1048 (1990), the plaintiff argued that the board was an agency subject to the Procedure Act.  The General Assembly created the board by statute.  As part of the same statute the legislature created the teachers' retirement system.  The Board operated only in Chicago, while the retirement system performed similar functions for teaching personnel for the remainder of the state.  
Guse
, 203 Ill. App. 3d at 113-14.  The court emphasized that the state funded the retirement system, but not the board.  
Guse
, 203 Ill. App. 3d at 117.  The board consisted of representatives of contributors to the pension fund, pensioners, and the Chicago Board of Education.  The Governor appointed none of the board members, and none were state officials.  Moreover, the board's title reflected no state affiliation.  
Guse
, 203 Ill. App. 3d at 117-18.  The court concluded that the board could not be considered a state agency subject to the Procedure Act.

Here, the LAC, like the board in 
Guse
, operated only in Chicago, while the State Commission, like the retirement system in 
Guse
, performed similar functions for the remainder of the state.  The Liquor Control Act establishes that two members of the State Commission also serve as members of the LAC; a resident of the city selected by the city council completes the LAC.  235 ILCS 5/7-8 (West 1996).  The city must pay the full annual salary for the third member of the LAC.  235 ILCS 5/7-8 (West 1996).  LAC presented evidence, in a summary of proposed city appropriations, that the city also funds the other expenses of the LAC.  The Liquor Control Act expressly refers to the LAC as "the local license appeal commission."  235 ILCS 5/7-5 (West 1996).  Laristos cites no case holding that a similar governmental entity with strictly localized jurisdiction counts as an "agency" under the Procedure Act, and not as a unit of local government.  See 
Guse
, 203 Ill. App. 3d at 119; 
Danaher
, 40 Ill. App. 3d at 915-17; 
Schmeier v. Chicago Park District
, 301 Ill. App. 3d 17, 33, 703 N.E.2d 396 (1998); 
County of Macon v. Board of Education of Decatur School District No. 61
, 165 Ill. App. 3d 1, 7-8, 518 N.E.2d 653 (1987); 
Bethune v. Larson
, 188 Ill. App. 3d 163, 170, 544 N.E.2d 49 (1989); 
DuPage Aviation Corp. Flight Services, Inc. v. DuPage Airport Authority
, 229 Ill. App. 3d 793, 802, 594 N.E.2d 1334 (1992).

Laristos contends that if the Procedure Act does not apply, the LAC commissioners will not know what procedures and standards govern their decisions.  The LAC sent notice of its decision in accord with the requirements of the Liquor Control Act and not in accord with the Procedure Act.  The LAC's historical practice apparently included an assumption that the Procedure Act did not apply.  We see no reason for the LAC to alter its historical practices, which may bind that commission even if the Procedure Act does not apply.  See 
Olin Corp. v. Pollution Control Board
, 54 Ill. App. 3d 480, 485, 370 N.E.2d 3 (1977).

We hold that the City of Chicago License Appeal Commission is a unit of local government, and therefore the Procedure Act, by its own terms, does not apply.  The Liquor Control Act and the Review Law govern notice of and appeal from LAC decisions.  The Liquor Control Act provides:

"A copy of the *** order or decision of the *** license appeal commission *** shall be served upon each party of record ***.  *** [T]he mailing of a copy of any *** order of said commission *** to said party at [its service] address shall be deemed service thereof upon such party."  235 ILCS 5/7-10 (West 1996).

The Review Law states:

"Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision ***.  

The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when a copy of the decision is personally delivered or when a copy of the decision is deposited in the United States mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected by the decision at his or her last known residence or place of business."  735 ILCS 5/3-103 (West 1996).

Therefore, the LAC served its order on Laristos on April 4, 1997, when the staff assistant deposited a copy of the order in the mail with the correct address and postage.  The order itself correctly notified Laristos of the need to appeal within 35 days of the date of mailing, and the order also specified the mailing date as April 4, 1997.  Laristos filed its appeal more than 35 days later.  Therefore, the trial court lacked jurisdiction to consider the appeal.  See 
Chin v. Department of Public Aid
, 78 Ill. App. 3d 1137, 398 N.E.2d 135 (1979).

Because the trial court lacked jurisdiction to consider the complaint for administrative review, the judgment is vacated.  The LAC's decision remains the final determination for this case.

Vacated.

COUSINS, P.J. and McBRIDE, J., concur.